IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MENARD, INC.,

      Plaintiff & Counter-defendant,

      v.

DALLAS AIRMOTIVE, INC.,

      Defendant & Counter-claimant,

and

TEXTRON AVIATION, INC.,

      Defendant.

OPINION AND ORDER

18-cv-844-wmc

---

This civil case is set for trial commencing October, 19, 2020.  Plaintiff Menard, Inc. ("Menards"), asserts negligence claims against defendants Dallas Airmotive, Inc. ("DAI") and Textron Aviation, Inc., as well as a breach of contract claim against Textron, arising out of engine overhaul work on two of Menards' airplanes.  In turn, defendant DAI asserts counterclaims for tortious interference with contract and defamation based on Menards' sending 119 letters to other businesses or individuals who own airplanes with similar jet engines.  The court held a Final Pretrial Conference ("FPTC") on September 11, 2020, and is set to continue the conference on October 15, 2020.  Now, with the benefit of additional briefing from the parties, the court issues the following opinion and order in advance of that conference addressing reserved motions *in limine*, other motions, evidentiary objections and jury instructions disputes.[1]

---

[1] The court will also take up the parties' objections to their respective exhibits on October 15 and will issue a separate order on their objections to deposition designations.

OPINION

## I.  Motions *in Limine* and other Motions

### A.  Menards' MIL No. 1: exclude evidence of DAI's lost business damages (dkt. #156)

As the court explained in its previous motion *in limine* order, DAI seeks to pursue damages for lost business caused by Menards' allegedly defamatory letter.  Based on the lack of evidence presented in response, the court granted Menards' motion to exclude lost business damages, but indicated DAI could make a further proffer at the FPTC that would permit a jury to find causation.  At the conference, DAI submitted a proffer based on employees' testimony that the circumstances surrounding the alleged lost contract with third-party GRP were "highly unusual," arguably permitting a reasonable jury to infer that GRP declined DAI's bid because of Menards' letter.  The court then invited the parties to submit additional briefs on this issue.

In response, Menards now contends that:  (1) this evidence is insufficient to establish causation as a matter of law; (2) DAI failed to disclose this evidence timely as required under Rule 26; and (3) if the court were to admit this testimony, then Menards should be allowed to introduce previously excluded DAI business records suggesting that the letter "did not influence [GRP's] decision" to decline DAI's bid.  As for Menards' first objection, the court agrees that DAI's proffered evidence in support of its lost business claim is thin.  Still, it nonetheless presents some basis for a reasonable jury to find that DAI lost a GRP contract *because* of the allegedly defamatory letter.  For this reason, this "business practice" evidence is sufficient as a matter of law, and the jury must determine

whether that inference is reasonable from this testimony.  As for the second objection, as DAI explains in its response, its own employee, Mark Campbell, has already testified at his deposition to the factual circumstances surrounding DAI's business relationship with GRP. Moreover, DAI timely disclosed its claim for economic damages.  A more specific disclosure of Campbell's proffered testimony that DAI "customers do not just go quiet at that stage with no explanation" was not required under Rule 26, at least absent some evidence that Menards specifically asked about GRP's silence and DAI failed to respond fairly and honestly to that request.

This leaves Menards' third and final argument that it should be able to impeach Campbell's testimony by introducing DAI business records stating that "the Menard's letter did not influence [GRP's] decision" to decline DAI's bid.  As this court previously held, while the business records themselves fall within a hearsay exception, a statement within those records attributed to someone at GRP, that the Menard's letter did not influence its decision not to do business with DAI, is still inadmissible hearsay, at least for the truth of the matter asserted.  At most, Menards may present this statement to impeach Campbell or otherwise challenge his belief that GRP's silence or rejection of DAI's bid was unusual.

As such, the court will deny Menards' MIL No. 1, allowing DAI to pursue an economic loss claim and allow Menards to impeach DAI's witness by means of its own business records purporting to show the GRP's rejection of the bid was not because of the Menards' letter.

**B. MIL No. 6: exclude evidence of $565,000 aircraft sale proposal to Menards (dkt. #163)**

After hearing argument at the September 11, 2020, conference, the court denied

this motion to exclude evidence of a $565,000 aircraft sale proposal to Menards, but

permitted Menards to submit a curative instruction, which it now has done.  (Menards'

Suppl. Pretrial Br. (dkt. #280) 4.)  Specifically, Menards proposes the following language:

> An injured party has a duty to use reasonable means under the circumstances to avoid or minimize its damages.  However, if the effort, risk, sacrifice, or expense the injured person must incur to avoid or minimize the loss or injury is such that a reasonable person under the circumstances might decline to incur it, the injured party's failure to act will not bar recovery of full damages.  In determining the amount of damages to award Menards, you should consider whether Menards's decision not to accept the $565,000 aircraft sale proposal was reasonable under the circumstances at th[at] time.

(*Id.* (citing *Kuhlman, Inc. v. G. Heileman Brewing Co.*, 266 N.W.2d 382, 384 (Wis. 1978)).)

Since DAI has offered no objection to this propose instruction, the court agrees that the

instruction is appropriate and will include it in its instructions before the damages phase

of trial.

**C. MIL No. 9: exclude undisclosed expert witness and associated hearsay reports (dkt. #166)**

At the September 11 FPTC, the court continued to reserve on a portion of Menards'

MIL No. 9, which seeks to exclude DAI's experts from referring to investigative reports by

a third-party, Ming Zhou, unless timely disclosed.  In response, DAI directs the court to

its experts' reliance on Zhou's reports in each of their respective reports.  Specifically, DAI

notes that Aaron Jones relied on Zhou's finding that the bolts were made from Waspaloy,

4

a finding that he later addressed in describing the difference between Greek ascaloy and Waspaloy, and also noted that he reviewed her report in Appendix A to his report.  (DAI's Suppl. Br. (dkt. #289) 2 (citing Jones Rept. (dkt. #276) 5, 12, 15, App. A).)  Expert Ian Cheyne's report also described the significance between the ascaloy versus waspaloy variation, though DAI stops short of directing the court to any reference to Zhou's report. (*Id.* (citing Cheyne Rept. (dkt. #277) 4, 6-7).)

In its response, Menards argues that DAI's proffer demonstrates that DAI's experts, and really only Jones, relied on the third finding in Zhou's report -- that the bolts were made with Waspaloy -- which is also a fact not in dispute.  (Menards' Resp. (dkt. #291) 6.)  Critically, neither expert relied on any other findings in the Zhou report and, as Menards points out, Jones affirmatively *disagreed* with the first two findings in Zhou's report.  (*Id.* at 7-8.)

Based on these supplemental submissions, the court concludes that at trial DAI's experts may only refer to the Zhou report to establish that the bolts at issue are made from Wasapaloy, since this appears to be the only finding on which they "reasonably relied" on the report for purposes of satisfying Rule 703.  To the extent this fact is not in dispute, as Menards represents, then there is no reason for DAI's experts to mention the Zhou report. Regardless, given Jones' expressed disavowal of any reliance on Zhou's first and second conclusions, Jones may not testify to Zhou's findings at trial.

### D. MIL No. 5: exclude processes that DAI undertook post-overhaul of the Menards' engines (dkt. #180)

Next, the court denied the portion of DAI's MIL No. 5, which sought to exclude

proof of DAI processes adopted post-overhaul, but invited DAI to submit a curative instruction, which it now has done.  DAI submits two proposed instructions, one to provide immediately after the evidence is admitted and the second to provide in closing instructions.  (DAI's Suppl. Br. (dkt. #290) 2.)  While the court believes a curative instruction should be given, the court will only give it once at the time the evidence is admitted.

With slight modifications to DAI's proposed language, therefore, the court will instruct the jury as follows at the relevant time:

> You have just heard evidence of certain of DAI's overhaul processes that were adopted *after* it overhauled the two engines at issue in this case.  You should *not* consider this evidence as proof that DAI was negligent in overhauling the engines at issue in this case.  Rather, you may only consider this evidence for the limited purpose of assessing DAI's belief that a defect in Pratt & Whitney's bolts caused the bolts to break.

### E.  DAI's Motion to Call Two Witnesses via Video

DAI requests that two of its employees, Mark Campbell and Felipe Torres, testify via video, in light of Wisconsin's high rate of COVID cases.  (Dkt. #271.)  Menards does not oppose this request.  (Dkt. #300.)  The court will not only grant this motion, but strongly encourages counsel to agree on any other witnesses that could appear by video given the recent, disturbing uptick in such cases.

In renewing its request as to Torres in a second motion (dkt. #299), DAI makes three other requests:  (1) to seal exhibits and testimony related to DAI's revenues and profits; (2) order the admission of expert data without publication to the jury; and (3) allow the designation of certain exhibits in excess of 500 mb of data.  As for the first

motion, DAI may renew its request in a post-trial motion if this evidence or testimony is actually admitted at trial, with specific citations to the record and proposed, redacted exhibits and transcripts.  As for the latter two requests, the court will take up concerns about the admission of specific exhibits in its review of the parties' objections during the October 15, 2020, conference.  As such, this motion is granted as to Torres appearing at trial via video, but denied without prejudice in all other respects.

## II. DAI's Amended Expert Narratives

The court has reviewed DAI's proposed amended expert narratives.  (Dkt. #287.) The court will delete the first sentence as to each, but otherwise will read them.

## III. Modifications to Closing Instructions

### A.  Negligence Claim against Textron

Although recognizing at the September 11 FPTC that Textron should have raised this argument in a motion for summary judgment, the court permitted Textron to brief whether Menards can assert a negligence claim independent of its breach of contract claim. In its brief, Textron argues that Menards does not have a negligence claim because there is no duty independent of the parties' contract.  (Textron's Suppl. Pretrial Br. (dkt. #282) 5-6 (citing *Jacobs v. Karis*, 504 N.W.2d 353, 355 (Wis. Ct. App. 1993); *Madison Newspapers, Inc. v. Pinkerton's Inc.*, 545 N.W.2d 843 (Wis. Ct. App. 1996)).)  In other words, "[i]f Menard had contracted with Dallas Airmotive directly or if Menard arranged the overhaul work through a different entity, [Textron] would have no duty to ensure the work was

7

properly done." (*Id.* (citing *Dvorak v. Pluswood Wis., Inc.*, 358 N.W.2d 544, 545 (Wis. Ct. App. 1984)).)

In response, Menards directs the court to *Insurance Company of North America v. Cease Electric Inc.*, 2004 WI 139, 276 Wis. 2d 361, 688 N.W.2d 462 ("*ICNA*"), in which the Wisconsin Supreme Court held that "the economic loss doctrine is inapplicable to claims for the negligent provision *of services,*" as opposed to goods. *Id.* at ¶ 52 (emphasis added). Menards also points out that the cases cited by Textron predate *ICNA,* and further argues that separate from any contractual obligations, by agreeing to broker the engine repairs, Textron assumed duties of ensuring that DAI:  (1) was adequately informed as to how to inspect diffuser bolts; (2) possessed sufficient information from Pratt & Whitney regarding the premature failure of diffuser bolts; and (3) exercised its discretion to replace bolts. (Menards' Resp. (dkt. #291) 2-3.)

Based on the holding in *ICNA*, the court agrees that the economic loss doctrine does not bar Menards' negligence claim against Textron.  However, this still begs the question as to whether Menards can maintain *both* contractual *and* negligence claims at trial (or has to elect one or the other), as well as what obligations/duties Textron actually undertook here with respect to DAI's work.

Indeed, Textron argues that if a negligence claim exists, Menards has not offered any evidence in support of the scope of Textron's duty or breach of that duty, and specifically lacks any expert testimony as to "the standard of care [owed by] an entity that arranges to have an engine overhaul performed by a third party," much less as to what information Textron failed to provide to DAI or steps it should have taken to ensure that

8

DAI appropriately exercised its discretion in reinserting used diffuser bolts. (Textron Suppl. Pretrial Br. (dkt. #282) 7-9.) Menards responds that expert testimony is not required for "the jury to understand the relatively uncomplicated duties that Menards alleges Textron breached," and it has evidence that DAI was not adequately informed as to the proper manner for inspecting bolts, did not possess updated information regarding performance of diffuser bolts, and did not exercise any discretion in determining whether to replace bolts. (Menards' Resp. (dkt. #291) 4-5.)

While the court agrees with Menards that expert testimony is not required, Menards fails to present any basis -- absent the existence of the contractual relationship between Textron and Menards -- for finding that Textron had an independent duty to ensure DAI was adequately informed about how to inspect and replace diffuser bolts. While *ICNA* held that the economic loss doctrine does not apply to service contracts like that at issue here, Wisconsin law still recognizes that mere negligence in the performance of a contract cannot *by itself* constitute a separate tort. *See Landwehr v. Citizens Tr. Co.*, 110 Wis. 2d 716, 723, 329 N.W.2d 411, 414 (1983) ("[T]here must be a duty existing independently of the performance of the contract for a cause of action in tort to exist."); *Miller v. Vonage Am., Inc.*, No. 14-CV-379, 2015 WL 59361, at *6 (E.D. Wis. Jan. 5, 2015) (discussing line of cases, explaining that the Wisconsin Supreme Court "explicitly rejected the notion that negligence in the performance of a contract can by itself constitute a separate tort," and further explaining that *ICNA* did not change that holding).

Given that Menards has failed to identify any duty separate from Textron's performance under the contract, the court will not instruct the jury on a negligence claim

against Textron.  As discussed below, this still leaves the question as to whether Menards' breach of contract claim is anything other than derivative of DAI's alleged failure to properly service the engine.  As such, it is not clear what independent question remains for the jury as to any claim against Textron.  The court will take this up with the parties during tomorrow's conference.

**B.  Negligence Claim against Pratt & Whitney**

The court indicated during the September 11, 2020, conference that it would add instructions about whether Pratt & Whitney was negligent and ask a corresponding question on the special verdict.  In response, DAI provided the court with an instruction, requiring Menards to prove its negligence claim against Pratt & Whitney, which is silly. Menards does not carry the burden to prove negligence as to non-party Pratt &Whitney. Instead, if DAI wishes to argue that blame should fall on Pratt & Whitney as the engine manufacturer (or at least some percentage of comparative negligence should), then the burden falls on DAI to prove it.  As such, while the court will instruct the jury that it may assign some or all of the negligence to Pratt & Whitney, it will also instruct that the burden is on DAI to prove it.

**C.  Additional Language for Breach of Contract Claim against Textron**

At the September 11 FTPC, the court directed Menards and Textron to each propose additional language describing the contract at issue in this case and also invited other proposed edits.  In response, Textron includes the language in the 2013 Service Order, specifically:

> Cessna [now Textron Aviation Inc.], its employees and agents
> may operate the aircraft to test the maintenance performed.
> Cessna shall not be liable for any loss or damage to their
> aircraft or its contents resulting from causes beyond Cessna's
> control.
>
> Cessna is not bound by the terms of any other document.  The
> Terms of this document shall take precedence.  Cessna's failure
> to object to any other terms shall not be deemed to be a waiver.
>
> Prior to signing this document, customer shall notify Cessna in
> writing of all laws, regulation, and treatises, that customer
> understands to authorize customer to deduct taxes from
> customer's payment to Cessna.  Customer waives all arguments
> for deducting taxes from customer's payment if customer fails
> to provide written notice to Cessna as required.  Cessna does
> not agree to accept less than full payment from customer.
>
> Cessna warrants parts and labor for six months.  As customers'
> sole remedy, Cessna will repair or replace parts and/or re-
> perform applicable portions of services if they are found
> defective in Cessna's sole discretion.  All implied warranties,
> including merchantability, fitness for a particular purpose, etc.,
> are specifically excluded from this limited warranty.

(Textron's Suppl. Pretrial Br. (dkt. #282) 9-10.)

Not surprisingly, Menards does not want this language in the instructions, arguing that "the terms and conditions . . . do not actually cover what Menards purchased and what Textron (through Dallas Airmotive) provided:  overhaul services."  (Menards' Resp. (dkt. #291) 5.)  Normally, the court would be inclined to stick to language from the 2013 Service Order, but Textron has never disputed that it undertook the obligation to provide overhaul service of Menards' engines, meaning that notwithstanding the language of the Service Order, both sides appear to agree that the essential term was implied rather than

explicit.[2]  Again, the question remains whether there is anything for the jury to decide with respect to Texron's liability should it find that DAI was negligent in performing overhaul services.

While Menards punts on any language describing the parties' contract, Menards proposes two additions to the breach of contract instruction.  *First*, Menards seeks to include language that "[a] duty to perform under the contract includes defectively performing as well as not performing at all."  (Menards' Suppl. Pretrial Br. (dkt. #280) 2 (quoting *Milwaukee Cold Storage v. York Corp.*, 37 N.W.2d 505 (Wis. 1958)).)  Textron offers no response to this addition, and, therefore, the court will include this language if it is even necessary to submit this question to the jury.

*Second*, Menards seeks to include the following language:  "The act that Textron delegated the performance of engine overhaul work to Dallas Airmotive does not remove its responsibility regarding the proper performance of the overhaul.  Textron is responsible to Menards for a breach of contract if the engine overhauls were not properly performed."  (Menards' Suppl. Pretrial Br. (dkt. #280) 2 (citing *Steel v. Pace Setter Motor Cars, Inc.*, 672 N.W.2d 141 (Wis. Ct. App. 2003)).)  As for this addition, Textron agrees with the general principal that one cannot avoid a breach of contract claim by delegating contractual duties, but argues that its liability cannot simply rely on a finding that DAI was negligent.  Here, too, the court is left to puzzle why this should not be so, and will discuss this further tomorrow.

---

[2] In particular, Textron has never relied on the warranty limitations in the Service Order.

### D. Additional Language for Defamation Claim

As for the defamation claim, Menards request that the court include the following language: "A statement is false by implication if it implies a fact that is false." (Menards' Suppl. Pretrial Br. (dkt. #280) 3.) DAI objects to this proposed language on the basis that it "(a) misstates the law; (b) is confusing and unintelligible; and (c) ignores DAI's theory of the case -- namely that the Menard Letter falsely implies DAI negligently serviced the Menard engines at issue." (DAI's Resp. (dkt. #296) 4-5.)

The court does not understand DAI's objections. The language proposed by Menards simply defines the previous sentence in the instruction, which states the first element of the claim: "Menards made a false statement, which includes a statement that is false by implication." The addition of Menards' proposed sentence does not change that element or otherwise undermine a claim based on a statement that is false by implication. While it may not be particularly helpful to the jury, DAI may argue from this language that the letter is false by implication because it implies that DAI negligently services Menards' engines. As such, the court will include this proposed language.

### E. Applicability of Abuse of Privilege Instruction

Menards mentioned at the September 11, 2020, conference that it believed the abuse of privilege language should not be included because the judicial immunity privilege is absolute. The court invited additional briefing on this argument, which Menards has now provided. (Menards' Suppl. Pretrial Br. (dkt. #280) 8-10.) In its brief, Menards directs the court to various cases describing the judicial immunity privilege as "absolute," meaning that its application does not turn on the defendant's motives. (*Id.* (citing

*Converters Equip. Corp. v. Condes Corp.*, 258 N.W.2d 712, 716 (Wis. 1977); *Rady v. Lutz*, 444 N.W.2d 58, 59 (Wis. Ct. App. 1989); *Lathan v. Journal Co.*, 140 N.W.2d 417 (Wis. 1966); *Zinda v. La. Pac. Corp.*, 440 N.W.2d 548, 552 (Wis. 1989)).)

In response, DAI argues that whether the privilege is absolute is a question of law for the court and requires that "[t]he statement maker and the recipient must be involved and closely connected to the proceeding." (DAI's Resp. (dkt. #296) 4 (citing *Rady*, 44 N.W.2d at 60).) Here, DAI contends that the 191 recipients of the letter were not closely connected to the proceeding.

Both parties direct the court to *Rady v. Lutz*, 444 N.W.2d 58 (Wis. Ct. App. 1989), in support of their respective positions. In *Rady*, the Wisconsin Court of Appeals concluded that a letter an attorney sent to a court administrator was subject to absolute privilege. In so holding, the court explained "[w]hile this privilege embraces anything relevant, it is not carte blanche to defame and slander with impunity during a judicial proceeding. *See Spoehr v. Mittelstadt*, 34 Wis.2d 653, 150 N.W.2d 502 (1967). The statement's maker and the recipient must be involved in and closely connected to the proceeding." *Id.* at 60. Menards also directs the court to *Converters Equip. Corp. v. Condes Corp.*, 258 N.W.2d 712 (1977), in support of its position that the judicial immunity privilege is absolute, but in that case the Wisconsin Supreme Court similarly explained that "in every case in which this court has found a statement made preliminary to or during the course of judicial or quasi-judicial proceedings to be absolutely privileged, both the maker of the statement and the recipient were involved in and closely connected with the

14

proceedings." *Id.* at 716.[3]

Not only do these cases support a finding that any privilege is conditional given that the recipients of the letters were not involved in (or at minimum, not "closely connected" with) Menards' negligence claim, but also these cases call into question whether the judicial immunity privilege applies at all to the facts at issue in this case.  As such, the court will hear further argument from the parties on this issue during the October 15 conference.[4]

ORDER

IT IS ORDERED that:

1) Menard, Inc.'s MIL No. 1 to exclude evidence of DAI's lost business damages (dkt. #156) is DENIED.

2) The reserved portion Menards' MIL No. 9 to exclude undisclosed expert witness and associated hearsay reports (dkt. #166) is GRANTED.

3) DAI's motion to call Mark Campbell and Felipe Torres by video (dkt. #271) is GRANTED.

4) DAI's motion for miscellaneous relief (dkt. #298) is GRANTED IN PART AND DENIED WITHOUT PREJUDICE IN PART.

Entered this 14th day of October, 2020.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[3] The other cases cited by Menards simply state that the judicial immunity privilege is absolute, without applying or otherwise discussing whether the privilege applied to the facts in those cases.

[4] In light of this, the court will also reserve on DAI's proposed additions to the abuse of privilege instruction.